# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| NACIE TRENT, | : | |
| Plaintiff, | : | |
| | | Case No. 3:09cv00453 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.    Introduction

Plaintiff Nacie Trent, a former stock clerk, cashier, nurse's aid, and factory worker, brings this case challenging the Social Security Administration's denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  The denial occurred through the decision of Administrative Law Judge Thaddeus J. Armstead Sr., who concluded that Plaintiff had not established that she was under a benefits-qualifying disability.  (Tr. 19-33).

This Court has jurisdiction to review Administrative Law Judge Armstead's non-disability decision and the resulting denial of Plaintiff's DIB and SSI applications.  *See* 42

---

[1]  Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

U.S.C. §§405(g), 1383(c)(3).  The case is before the Court upon Plaintiff's Statement of

Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's

Reply (Doc. #12), the administrative record, and the record as a whole.

Plaintiff seeks an Order reversing the denial of her DIB and SSI applications and

remanding this matter to the Social Security Administration for payment of benefits.  Or,

at a minimum, Plaintiff seeks an Order remanding this matter to correct certain errors.

The Commissioner seeks an Order affirming the Administrative Law Judge's decision.


## II.    Procedural Background

The ALJ issued two decisions, each concluding that Plaintiff was not under a

disability.  Before issuing his first decision, the ALJ held a hearing and a supplemental

hearing during which Plaintiff, a medical expert – Dr. Houser, and a vocational expert

testified.  (Tr. 727-69).  The ALJ issued his first non-disability decision in June 2007 (Tr.

447-57), and Plaintiff sought further administrative review.

The Appeals Council of the Social Security Administration vacated the ALJ's first

decision in part because the decision did "not reflect consideration of all of the claimant's

impairments, in this case her obesity and its effect on her residual functional capacity,[2] as

required by SSR 02-1p.  In addition, the severity of the claimant's mental impairment:

Depression, which is mentioned frequently throughout the decision ... remains unclear...."

---

[2]  The phrase "residual functional capacity" refers to the assessment of a claimant's physical and mental abilities or what the individual can or cannot do despite his or her limitations.  *See* 20 C.F.R. §404.1545(a)(1); *see also Howard v. Commissioner of Social Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

(Tr. 465-67)(footnote added)(internal citations omitted).

On remand the ALJ held a second administrative hearing.  (Tr. 770-827).  Plaintiff again testified along with another medical expert – Dr. Goren – and a vocational expert. The ALJ's second non-disability decision, issued in January 2009, is at issue in the present case.

### III.    Factual Background

#### A.    Plaintiff's Health and Vocational Profile

At the time of the ALJ's non-disability decision, Plaintiff was under age fifty and was therefore categorized as a "younger person" for the purpose of resolving her DIB and SSI applications.  20 C.F.R. §§404.1563(c), 416.963(c).  She has a ninth grade education and has not obtained a GED.   She completed a three-month nursing assistance program in 2002.  (Tr. 97-98).

Plaintiff employment history is limited to temporary jobs including, for example, a job as a warehouse worker and a job as a sales clerk.  (Tr. 38, 556-57).

Plaintiff's health problems are many:  obesity, fibromyalgia, diabetes mellitus, depression, right-shoulder tendonitis, lumbar degenerative disease, and tremors possibly related to multiple sclerosis.  She asserted in support of her DIB and SSI applications that her disability began on February 15, 2001.

#### B.    Obesity, Dr. Sharma, and Dr. Menendez

The Social Security Administration recognizes that obesity "is a complex, chronic

disease characterized by excessive accumulation of body fat." Social Security Ruling 02-1p, 2000 WL 628049 at *2 (Sep. 12, 2002).

Plaintiff's height and weight measure to the level of obesity, at times falling within the category of "extreme" obesity when her body mass index (kg ÷ m²) equals or exceeds 40. *See id*. Her height is documented between five feet four inches and five feet six inches tall. (Tr. 228, 527). In October 2004 she weighed 260 pounds. *Id*. In November 2006 she weight 245 pounds. (Tr. 419). In May 2007 she weighed 247.6 pounds – a body mass index equaling 40. (Tr. 442). In March 2008 she weighed 262 pounds – a body mass index equaling 42.29. (Tr. 527). And seven month later she weighed 246.5 pounds. (Tr. 507).

In April 2004 Dr. Sharma, a physician at the Ohio State Medical Center's Neurology Clinic, wrote a letter describing Plaintiff with a history of fine tremors or spasms in her arms and legs since October 2003. (Tr. 219). He noted that Plaintiff's February 2004 MRI "shows elevated white matter, non-enhancing lesion on this patient meets the diagnostic criteria for multiple sclerosis. Neither her symptomatology and her findings from the large exams suggest that she has multiple sclerosis at this point. She has a mass in her thyroid. She might have an autoimmune disease, or thyroiditis, or maybe hyperthyroidism like Graves' disease." (Tr. 220).

Plaintiff underwent foot surgery in August 2004 to remove a "foreign body of inclusion cyst" in her right foot. (Tr. 224-25). A pathology report described the cyst as benign. (Tr. 227).

4

In October 2004 Plaintiff began physical therapy for low back pain.  (Tr. 230-31).
A physical therapist documented that Plaintiff walked with an antalgic gait with a limp
and with decreased weight bearing on her left leg.  (Tr. 230).  She also demonstrated
decreased range of motion, decreased strength, and increased pain level upon certain
tests.  (Tr. 231).

Plaintiff's physician Dr. Menendez completed a questionnaire in March 2006.  He
diagnosed Plaintiff with diabetes mellitus, spondylosis, and herniated lumbar disc.  (Tr.
241).  He checked boxes indicating that Plaintiff had multiple tender points, non-
restorative sleep, chronic fatigue, morning stiffness, muscle weakness, frequent and
severe headaches, numbness and tingling, breathlessness, and depression.  (Tr. 241).  He
noted that her tender points were located over her neck, low back, hips, and knees.  *Id*.
He also indicated that Plaintiff's pain would be severe enough to constantly interfere with
her attention and concentration to perform even simple work tasks; Plaintiff was
incapable of performing even low stress jobs; she could walk less than one city block; and
she could sit or stand for only fifteen minutes at a time for a total of less than two hours
during an eight-hour workday.  (Tr. 242-43).  And Dr. Menendez believed that Plaintiff
could never lift ten pounds or more; could rarely lift less than ten pounds; could never
twist, stoop, crouch, or climb ladders; could rarely climb stairs; and could occasionally
look up or turn her head right or left.  (Tr. 244).

C.      **Dr. Kramer**

5

In June 2008 psychologist Dr. Kramer examined Plaintiff at the request of the Ohio Bureau of Disability Determinations.  (Tr. 497-506).  Dr. Kramer diagnosed Plaintiff with major depression and cognitive disorder (not otherwise specified).  (Tr. 501-02).  He recognized that she has diabetes, fibromyalgia, degenerative disc disease, and possible multiple sclerosis "per history."  (Tr. 502).  He characterized her Global Assessment of Functioning at 55, indicating moderate symptoms.[3]  *Id.*

He opined that Plaintiff 's mental ability to relate to co-workers and supervisors was moderately impaired by depression, tearfulness, psychomotor retardation, and social withdrawal. Her ability to understand, remember, and follow instructions was moderately impaired by short-term memory loss and problems with concentration.  Her ability to maintain attentions, concentration, persistence, and pace to perform simple and repetitive tasks was moderately impaired by depression and short-term memory difficulties and other cognitive problems.  And her mental ability to withstand the stress and pressure of day-to-day work activities was moderately impaired.  (Tr. 502).  Dr. Kramer concluded:

> Overall, it is concluded that the claimant has the mental ability to perform simple and repetitive tasks that do not involve any sort of cognitive complexity or sustained concentration and focus.  She also probably would have some problems functioning without some supervision because of her memory difficulties.

*Id.*

---

[3]  Health care clinicians perform a Global Assessment of Functioning to determine a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness.  It is, in general, a snapshot of a person's overall psychological functioning at or near the time of the evaluation.  *See Martin v. Commissioner*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at pp. 32-34.

### D.    **Dr. Houser**

Dr. Houser, an internal medicine physician, testified during the ALJ's supplemental hearing.  (Tr. 741-61).  He stated that Plaintiff suffered from fibromyalgia, lumbar disk disease, diabetes mellitus, and a possible demyelinating process without a specific diagnosis.  (Tr. 743).  He noticed that Plaintiff did not attend her physical therapy appointments on April 7, 2006, April 11, 2006, and April 13, 2006.  (Tr. 745).

Dr. Houser acknowledged that Plaintiff had been diagnosed with fibromyalgia.  He explained, however, "one of the recommended treatments for fibromyalgia is exercise. So the fact that a person has fibromyalgia doesn't mean that they can't or shouldn't participate in activities.  I think you know certainly things of a medium and heavy work would generally be precluded and not recommended...."  (Tr. 747).

Dr. Houser opined that Plaintiff's degenerative disc disease was mild and not disabling.  (Tr. 749).  He thought generally that such a condition would prevent a person from performing medium or heavy work, but "sedentary work should not be affected and at least ... a limited range of light work would fall within the likelihood of that limitation." (Tr. 749).  He believed that Plaintiff could lift twenty pounds occasionally and ten pounds frequently.  (Tr. 750).  She would be limited to standing two hours a day.  *Id.*

The ALJ questioned whether Dr. House was relying on objective evidence in support of his opinion about Plaitniff's ability to stand/walk.  (Tr. 750-752).  Dr. Houser then stated that stooping and bending would be occasional and placed a restriction of no ladders, ropes, scaffolds.  (Tr. 754).

7

In response to questions by Plaintiff's counsel, Dr. Houser stated that multiple sclerosis was not excluded and that only 30-40 percent of cases of multiple sclerosis are actually diagnosed. (Tr. 758). He testified that he could not say for sure that Plaintiff has multiple sclerosis based upon the MRIs in the record. *Id.* Dr. Houser then agreed with counsel that it would be possible for an individual with Plaintiff's MRI findings to have problems such as tremors and weakness on one side and balance issues. *Id.* Dr. Houser also stated it was possible for a doctor to see gradual progression of symptoms to the point that it would meet the diagnosis of multiple sclerosis. (Tr. 759)

### E. <u>Dr. Goren</u>

Dr. Goren testified at the hearing held by the ALJ after the Appeals Council's remand. (Tr. 782-784, 796-813). Dr. Goren recognized that Plaintiff had been diagnosed with fibromyalgia and that she had reported feeling severe pain. (Tr. 796-98). Dr. Goren concluded that her fibromyalgia was "not a severe impairment and would not cause any restrictions." (Tr. 797). He testified that treatment for fibromyalgia, no matter how severe the pain, is exercise and there would be no reason for restrictions. (Tr. 798).

Dr. Goren testified that if the residual functional capacity form completed by Dr. Menendez was true, then she functioning at below the sedentary level and could not even feed herself. (Tr. 799). Dr. Goren observed that Plaitniff was overweight, so she must have been able to feed herself.

Dr. Goren stated that the diagnosis of multiple sclerosis was no more than

questionable because the objective evidence does not necessary point to that diagnosis. (Tr. 799).

Dr. Goren testified, "Claimant also talked about heel spurs. All of us have heel spurs. There's no reason to believe that they would cause an impairment. She talked about diabetes. That in itself is not an impairment. It's the complications of diabetes that are an impairment." (Tr. 800). Dr. Goren noted that Plaintiff did not have any complications from diabetes. *Id*.

Dr. Goren testified that he did not have reference to mental disorders from a mental health professional but only a consultative examination with no I.Q. testing. (Tr. 801). He felt that she may have below average intelligence because she made it only through the ninth grade, but he further noted that she had no problems reading or writing (Tr. 801).

Dr. Goren stated that Plaintiff's only functional impairment was her right shoulder, and he stated obesity did not affect that impairment. (Tr. 802).

Dr. Goren assessed Plaintiff's residual functional capacity at the light level of exertional work with no restrictions on standing, walking, or sitting. (Tr. 802-03). She would be limited to occasional right overhead push/pull and occasional right overhead reaching. (Tr. 803). When asked if multiple sclerosis warranted restricting her from hazards, Dr. Goren said the record did not clearly show she has multiple sclerosis. (Tr. 803). He explained, "On September 2, 2008, treating neurologist, Dr. Shu, which [sic] the claimant says is myoclonus is actually a psychogenic tremor.... In other words it's not

9

organically determined, its volitional."  (Tr. 803-04).

    With respect to mental restrictions, Dr. Goren opined that Plaintiff could perform

work with no high production quotas and superficial interpersonal interaction with

supervisors, co-workers, and general public.  (Tr. 804).  Because Dr. Goren found no I.Q.

testing in the record, he did not agree with the limitation from the consultative exam of

simple, repetitive tasks and no tasks involving complex and sustained concentration or

focus.  *Id*.

    When Plaintiff's counsel asked how long it would take to diagnose multiple

sclerosis, Dr. Goren replied that it would take one day.  (Tr. 807).  He then explained the

difference between psychogenic tremors and multiple sclerosis and said that in his

opinion, if you were not sure that the diagnosis is multiple sclerosis, then he assumed it

was a psychogenic tremor, based solely on his experience.  *Id*.  When asked whether

Plaintiff could see a specific neurologist who could perform testing to determine whether

her condition is psychogenic in nature, Dr. Goren responded that they would not be able

to say whether the condition was psychogenic in nature.  (Tr. 807-08).

    Dr. Goren felt there was no evidence for the need to use a walker, and that the only

way someone would need a walker is if they used it on all occasions, not for specific

purposes.  (Tr. 808-09).  He then stated that he could not tell whether Plaintiff needed a

cane and that a cane would not help psychogenic tremor.  (Tr. 809).  Dr. Goren further

testified that Plaintiff had no impairment that required the use of a cane.  *Id*.

    Dr. Goren testified that fibromyalgia was a diagnosis of exclusion that cannot be

present "with another disease which ... could mimic it." (Tr. 810). He believed that fibromyalgia could not occur with together with spondylolisthesis or disc herniation. (Tr. 809). Dr. Goren observed that even though her treating physician, Dr. Menendez, found the trigger points necessary for fibromyalgia, he did not state where they were, and thus it was not an impairment. (Tr. 810). Dr. Goren accepted that Plaintiff had fibromyalgia, but he believed that it was not functionally limiting. (Tr. 811).

Without specifically recognizing Plaintiff's obesity, Dr. Goren also testified, "Being overweight would not have any event on shoulder functioning. The only physical restrictions they gave were related to the shoulder." (Tr. 802). The ALJ then asked, "And let's see, she's, she's 5'8" and 242. Does that present any significant [sic] as far as impairment to you, Doctor?" (Tr. 802). Dr. Goren answered, "No," *id.*, without further mention of Plaintiff's obesity or her height and weight or the impact obesity has on her work abilities.

## IV.    The "Disability" Requirement and The ALJ's Decisions

### A.    "Disability" Defined

To be eligible for benefits under the DIB or SSI programs a claimant must be under a "disability" (among other requirements). *See* 42 U.S.C. §§423(a), (d), 1382c(a). The Social Security Act defines the term "disability" in essentially the same manner under both programs. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

Narrowed to its statutory meaning, a "disability" includes only physical or mental

impairments that are both "medically determinable" and severe enough to prevent the applicant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70.

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

### B. The ALJ's Second Decision

In his second decision, the ALJ evaluated Plaintiff's DIB and SSI applications and the evidence of record under the five-Step sequential evaluation procedure required by Social Security Regulations. *See* Tr. 19-33; *see also* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).[4] His more notable findings began at Step 2, where the ALJ found that Plaintiff had several severe impairments: "obesity; fibromyalgia; right shoulder tendonitis; psychogenic tremor v. multiple sclerosis; diabetes mellitus; lumbar degenerative disc disease; and a depressive disorder...." (Tr. 21).

At Step 3 the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the impairments in the Listings,

_____

[4] The remaining citations to the Regulations will identify the pertinent DIB Regulation with full knowledge of the corresponding SSI Regulation.

12

20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 24).

At Step 4 the ALJ assessed Plaintiff's residual functional capacity as follows:

[T]he claimant has the residual functional capacity to perform light work[5] ... except she should not perform more than simple, repetitive tasks with no complex duties or sustained concentration and focus; requires the opportunity to sit or stand at will; should not climb ladders, ropes, or scaffolds or be exposed to unprotected heights or dangerous moving machinery; should nor [sic] perform more than occasional overhead reaching and[/]or pushing or pulling with the right upper extremity, not constant; should not perform more than occasional crawling, stooping, or climbing ramps or stairs; should not perform fast pace, strict time standard, or strict production quota work; and is limited to occasional, non-intense, only superficial, contact with co-workers, supervisors, and the public, for example, a job such as a cashier in a grocery store could be done.

(Tr. 27)(footnote added).

The ALJ also concluded that Plaintiff's testimony was not entirely credible.  (Tr. 30).  These and the other findings throughout the ALJ's sequential evaluation led him to ultimately conclude that Plaintiff was not under a disability and, consequently, not eligible for DIB or SSI.

## V.  **Judicial Review**

Judicial review determines " whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r. of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of*

---

[5]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...."  20 C.F.R. §404.1567(b).

*Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers v. Comm'r. of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence supports the ALJ's decision is present in the administrative record "if a 'reasonable mind might accept the relevant evidence as adequate to support..." the ALJ factual findings. *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r. of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004). In addition, the existence of substantial evidence does not depend on whether the Court disagrees or disagrees with the ALJ's factual findings. *Rogers*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead the ALJ's decision is affirmed "if his findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence could support a contrary decision." *Wright-Hines v. Comm'r. of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

The presence of substantial evidence will not typically justify an ALJ's failure to apply the correct legal criteria in many cases. *See Rabbers v. Comm'r. of Social Security*, 582 F.3d 647, 651 (6th Cir. 2009); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004); *Kalmbach v. Comm'r. of Soc. Sec.*, 2011 WL 63602 at *6 (6th Cir. 2011)("we must reverse and remand if the ALJ applied the incorrect legal standards, even if the factual determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different.").

14

VI.   **Discussion**

A.   **Plaintiff's Main Contentions**

Plaintiff asserts that the ALJ erred as follows:

1.  The ALJ's reasons for rejecting the opinion of Dr. Menendez, Ms. Trent's treating physician, are not based on substantial evidence.

The ALJ erred in relying on the opinion of Dr. Goren, the non-examining medical advisor who testified at the ALJ hearing.

2.  The ALJ failed to comply with SSR 96-7p in discrediting the claimant for her failure to obtain treatment without first considering her explanations for this lack of treatment.

3.  While the ALJ found that the claimant's obesity is a severe impairment, he failed to comply with [Social Security Ruling] SSR 02-01p in not considering the impact of the claimant's obesity on her ability to work.

4.  The ALJ erred by relying on an improper hypothetical to the vocational expert that does not constitute substantial evidence of the Plaintiff's vocational abilities.

(Doc. #7 at 31-32).

The Commissioner counters each argument, asserting:  substantial evidence

supports the ALJ's analysis of the medical source opinions; substantial evidence supports

the ALJ's credibility analysis; the ALJ fully considered Plaintiff's obesity on her work

abilities; and substantial evidence supports the ALJ's reliance on the vocational expert's

testimony.  (Doc. #9 at 72-78).

B.   **The ALJ's Findings at Steps 3 and 4**

Plaintiff argues that the ALJ failed to consider the impact Plaintiff's obesity

combined with her other impairments had on her work abilities as required by Soc. Sec. Ruling 02-1p.  The Commissioner argues that substantial evidence supports the ALJ's findings at Steps 3 and 4 and that the ALJ correctly relied on the opinions of Dr. Goren, who recognized that Plaitniff was overweight and who "testified that Plaitniff's height to weight ratio did not present any significant impairments."  (Doc. #11 at 78).

Social Security regulations required the ALJ to consider the impact of all Plaintiff's impairments-both severe and non-severe-on her work abilities.  *See* 20 C.F.R. § 404.1545(a)(2).  The Listings reinforce this Regulation with regard to obesity by mandating, "when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicator's must consider any additional and cumulative effects of obesity."  Listing 1.00Q (emphasis added), 20 C.F.R. Part 404, Subpart P, Appendix 1.

As noted above, §IV, the ALJ found at Step 2 of his sequential evaluation that Plaintiff's obesity constituted a severe impairment, and he found at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled one in the Listings.  (Tr. 24-27).  The ALJ addressed Plaintiff's obesity at Step 3 as follows:

> Further, State Agency medical consultants who reviewed the evidence of record in response to the claimant's initial application and request for reconsideration concluded that the severity of the claimant's impairments did not equal the severity of any impairment described in Appendix 1, Subpart P, Regulations No. 4 (Exhibits 1-A and 2-A [Tr. 50 and 51]). Inherent in their consideration was the affect of obesity on the claimant's other physical impairments as required by Social Security Ruling SSR 02-

16

1p.  It is found that the opinions of the reviewing consultants are correct as to that issue and, pursuant to Social Security Ruling 96-6p, those opinions are incorporated as a finding.

(Tr. 24)(brackets added).  Substantial evidence does not support the ALJ's findings concerning obesity at Step 3 because the evidence relied on – the opinions by state agency medical consultants – fails to reasonably support the ALJ's conclusion.  Although the Social Security Administration views these nonexamining sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act,"  Soc. Sec. Ruling 96-6p, 1996 WL 374180 at *2, the ALJ erred by not mentioning what Regulatory factor led him to credit their opinions.  Instead, the ALJ merely stated, without supporting discussion, that he found their opinions correct under the applicable Social Security Ruling, 96-6p.  This conclusory acceptance of the state agency consultants' opinions conflicts with both Ruling 96-6p and with the applicable Regulation, 20 C.F.R. §404.1527.  This Ruling explains:

The Regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker.  For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

For this reason, the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and

17

> Appeals Councils levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.  The adjudicator must also consider all other facts that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

Ruling 96-6p, 1996 WL 374180 at *2.  The ALJ did not indicate what regulatory factor led him to wholly credit the state agency consultants' opinions with regard to the impact of Plaintiff's obesity on her work abilities.  *See* Tr. 24-27.  This constituted a failure to apply the correct legal criteria because the Regulations and Rulings required the ALJ to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors, including supportability, consistency, and specialization.  *See* 20 C.F.R. §404.1527(d), (f); *see also* Social Security Ruling 96-6p, 1996 WL 374180.  The Regulations appear to emphasize this requirement by reiterating it no less than three times.  *See* 20 C.F.R. §404.1527(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); *see* also 20 C.F.R. §404.1527(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. §404.1527(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same).

In addition, even if the ALJ had not erred in this manner, a review of the state agency consultants' opinions reveals that they provide no reasonable support for the ALJ's decision concerning Plaintiff's obesity at Step 3.  This is so because the medical consultants's opinions appear in a one-page form without any supporting explanation and without even an oblique reference to Plaintiff's obesity.  *See* Tr. 50-51.  The forms,

moreover, were completed in September and December 2004 and thus pre-date much of the medical evidence in the record.  *See id.*  One report also indicates, parenthetically "no med. evidence in the file" (Tr. 50), tending to confirm that the state medical consultants formed their opinions based on an incomplete record.  For these reasons, the ALJ's decision regarding the combined effect of Plaintiff's obesity and other impairments at Step 3 of his sequential evaluation is unsupported by substantial evidence.

The ALJ also erred by not assessing or mentioning the impact of Plaintiff's obesity on her residual functional capacity, *see* Tr. 27-31, as required by the regulations, 20 C.F.R. §404.1545(a)(2), and explained by Social Security Ruling 02-1p:

> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment.  Individuals with obesity may have problems with the ability to sustain a function over time ... our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting ona [sic] regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

> The combined effects of obesity with other impairments may be greater than might be expected without obesity.  For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

Ruling 02-1p, 2000 WL 628049 at *6.  Although this Ruling does not require "any particular procedural mode of analysis for obese disability claimants," *Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 412 (6th Cir. 2006), the Regulations required the ALJ in the present case to do more than he did here – reach conclusions not supported by substantial evidence at Step 3, then omit consideration and discussion of obesity and its impact on

Plaintiff's residual functional capacity.

The Commissioner's reliance on Dr. Goren's opinions does not avoid the above problems or render the ALJ's errors harmless.  This is so because the ALJ also found that Plaintiff suffers from the severe impairment of fibromyalgia and lumbar degenerative disc disease.  Although the ALJ found these impairments had limited impact on Plaintiff's residual functional capacity, when combined with Plaintiff's obesity, these impairments (fibromyalgia and degenerative disc disease) would likely and logically cause greater limitations than they would if Plaintiff was not obese.  *See* Ruling 02-1p, 2000 WL 628049 at *6.  Dr. Goren's testimony provides little, if any, information about the combined effects of these impairments on Plaintiff's work abilities.  For example, the ALJ asked Dr. Goren – somewhat confusingly – "And let's see, she's, she's 5'8" and 242. Does that present any significant [sic] as far as impairment to you, Doctor?"  (Tr. 802). Dr. Goren merely answered, "No," *id*., without further mention of Plaintiff's obesity or her height and weight or the impact obesity has on her work abilities.  *See* Tr. 802-13. Indeed, a review of Dr. Goren's testimony does not reveal any meaningful testimony about what impact Plaintiff's obesity combine with her fibromyalgia and degenerative disc disease has on her work abilities.  At best, he considers these conditions in isolation and in a conclusory manner.  *See, e.g,* Tr. 802, 810-12.

Accordingly, Plaintiff's challenges to the ALJ's failure to consider the combined

effect of her obesity and other impairments are well taken.[6]

**VII.** <u>**Remand Is Warranted**</u>

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under sentence four of  42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding.  *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

Plaintiff seeks a remand for payment of benefits.  Yet, such a remand is unwarranted because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g) because due to problems set forth above and because the Social Security Administration has yet to resolve the

---

[6] In light of the above review, and the resulting need for remand of this case, an analysis of Plaintiff's remaining claims is unwarranted.

combined impact of Plaintiff's obesity, fibromyalgia, and degenerative disc disease as required by the regulations.  On remand the ALJ should be directed to address and resolve this issue, and to review the evidence under the required five-step sequential evaluation procedure to determine anew whether Plaintiff was under a disability and thus eligible for DIB and/or SSI.

## IT IS THEREFORE RECOMMENDED THAT:

1.    The Commissioner's non-disability finding be vacated;

2.    No finding be made as to whether Plaintiff Nacie Trent was under a "disability" within the meaning of the Social Security Act;

3.    This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4.    The case be terminated on the docket of this Court.


January 14, 2011                                 s/ Sharon L. Ovington
                                             Sharon L. Ovington
                                 United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).