# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

NACIE TRENT,                             :

    Plaintiff,                      :

                                    Case No. 3:09cv00453

vs.                                      :

                                    District Judge Walter Herbert Rice

MICHAEL J. ASTRUE,                       :    Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,                 :

    Defendant.                      :

# REPORT AND RECOMMENDATIONS[1]

## I.     Introduction

This matter is before the Court on Plaintiff's Application for Fees and Expenses Pursuant to the Equal Access to Justice Act (EAJA) (Doc. # 16), the Commissioner's Memorandum in Opposition (Doc. # 17), and the record as a whole.

## II.    Background

On January 14, 2011, a Report and Recommendation was issued recommending that Plaintiff's case be reversed and remanded pursuant to Sentence Four of 42 U.S.C. § 405(g) to resolve the combined impact of Plaintiff's obesity, fibromyalgia, and degenerative disc disease as required by Social Security regulations. The Report further

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

recommended that on remand, the Administrative Law Judge (ALJ) be instructed to review the evidence under the required five-step sequential evaluation procedure to determine anew whether Plaintiff was under a disability and thus eligible to receive disability insurance benefits or supplemental security income.  (Doc. #13, PageID at 106-07).  On February 4, 2011, the District Court adopted the Report and Recommendation in its entirety, and judgment was entered in Plaintiff's favor.  (Docs. #s 14, 15).

## III. Discussion

### A. Standard of Review

The EAJA provides for an award of attorney fees to a party who prevails in a civil action against the United States "when the position taken by the Government is not substantially justified and no special circumstances exist warranting a denial of fees." *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 445 (6th Cir. 2009) (citing 28 U.S.C. § 2412(d)(1)(A)).

The EAJA allows for an award of attorney fees if the party is the "prevailing party." 28 U.S.C. § 2412(d)(1)(B).  Plaintiff became the "prevailing party" when she obtained a reversal and remand for further administrative proceedings.  *See Shalala v. Schaefer*, 509 U.S. 292, 300-302 (1993).

The parties' present EAJA dispute in part concerns whether the Government's position in this case was "substantially justified" within the meaning of the EAJA.  "[S]ubstantially (i.e., for the most part) justified," under the EAJA, denotes a position that

2

is "'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004). A reasonable person could find the Government's position substantially justified if it rested on "a reasonable basis in law and fact." *Pierce*, 487 U.S. at 566 n.2; *see Howard*, 376 F.3d at 554. Even if it ultimately lacked merit, if the Government's position rested on a reasonable basis in law and fact, it meets the substantial justification standard. *See Pierce*, 487 U.S. at 566 n.2; *see also Howard*, 376 F.3d at 554.

The EAJA places the burden on the Government to demonstrate that its position was substantially justified. *See Healey v. Leavitt*, 485 F.3d 63, 67 (2nd Cir. 2007); *see also Hackett v. Barnhart*, 475 F.3d 1166, 1169 (10th Cir. 2007) (courts have "uniformly recognized" that this burden "must be shouldered by the Government.").[2]

### B. Analysis – Substantial Justification

The Commissioner argues that Plaintiff's application for EAJA fees should be rejected because the Government's support of the ALJ was substantially justified. The Commissioner reasons, "Although the Magistrate Judge found that the ALJ's reliance on Dr. Goren's opinions did not 'render the ALJ's errors harmless' because the ALJ did not consider the impact of Plaintiff's obesity combined with her fibromyalgia and lumbar degenerative disc disease..., the Commissioner's position was nonetheless substantially

---

[2] *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006); *Goad v. Barnhart*, 398 F.3d 1021, 1025 (8th Cir. 2005); *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001); *Lively v. Bowen*, 858 F.2d 177, 180 (4th Cir. 1988).

3

justified...." (Doc. #17, PageID at 128). The Commissioner points out that the ALJ mentioned Plaintiff's obesity numerous time during Dr. Goren's testimony and it was therefore reasonable for the Commissioner to assume that Dr. Goren considered Plaintiff's obesity when assessing her residual functional capacity. The Commissioner concludes, "Since the ALJ relied on Dr. Goren's opinion, which appeared to have considered all the relevant medical evidence, the Commissioner was substantially justified in defending the ALJ's decision and Plaintiff's EAJA fee request should be denied." (Doc. #17, PageID at 128-29).

The Commissioner's position in support of the ALJ's decision was not reasonably based in law. At Step three of the sequential evaluation, the ALJ relied on the medical opinions provided by state agency reviewers without evaluating under the applicable standards mandated by Social Security regulations. The prior explanation of this (in the Report and Recommendations) bears repeating and likewise establishes that the Commissioner's present search for substantial justification lacks merit:

> Social Security regulations required the ALJ to consider the impact of all Plaintiff's impairments-both severe and non-severe-on her work abilities. *See* 20 C.F.R. § 404.1545(a)(2). The Listings reinforce this Regulation with regard to obesity by mandating, "when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicator's must consider any additional and cumulative effects of obesity." Listing 1.00Q (emphasis added), 20 C.F.R. Part 404, Subpart P, Appendix 1.

> [T]he ALJ found at Step 2 of his sequential evaluation that Plaintiff's obesity constituted a severe impairment, and he found at Step 3 that

4

Plaintiff did not have an impairment or combination of impairments that met or equaled one in the Listings. (Tr. 24-27). The ALJ addressed Plaintiff's obesity at Step 3 as follows:

> Further, State Agency medical consultants who reviewed the evidence of record in response to the claimant's initial application and request for reconsideration concluded that the severity of the claimant's impairments did not equal the severity of any impairment described in Appendix 1, Subpart P, Regulations No. 4 (Exhibits 1-A and 2-A [Tr. 50 and 51]). Inherent in their consideration was the affect of obesity on the claimant's other physical impairments as required by Social Security Ruling SSR 02- 1p. It is found that the opinions of the reviewing consultants are correct as to that issue and, pursuant to Social Security Ruling 96-6p, those opinions are incorporated as a finding.

(Tr. 24)(brackets added). Substantial evidence does not support the ALJ's findings concerning obesity at Step 3 because the evidence relied on – the opinions by state agency medical consultants – fails to reasonably support the ALJ's conclusion. Although the Social Security Administration views these nonexamining sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act," Soc. Sec. Ruling 96-6p, 1996 WL 374180 at *2, the ALJ erred by not mentioning what Regulatory factor led him to credit their opinions. Instead, the ALJ merely stated, without supporting discussion, that he found their opinions correct under the applicable Social Security Ruling, 96-6p. This conclusory acceptance of the state agency consultants' opinions conflicts with both Ruling 96-6p and with the applicable Regulation, 20 C.F.R. §404.1527. This Ruling explains:

> The Regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

> For this reason, the opinions of State agency medical and
> psychological consultants and other program physicians and
> psychologists can be given weight only insofar as they are
> supported by evidence in the case record, considering such
> factors as the supportability of the opinion in the evidence
> including any evidence received at the administrative law
> judge and Appeals Councils levels that was not before the
> State agency, the consistency of the opinion with the record as
> a whole, including other medical opinions, and any
> explanation for the opinion provided by the State agency
> medical or psychological consultant or other program
> physician or psychologist. The adjudicator must also consider
> all other facts that could have a bearing on the weight to
> which an opinion is entitled, including any specialization of
> the State agency medical or psychological consultant.

Ruling 96-6p, 1996 WL 374180 at *2. The ALJ did not indicate what regulatory factor led him to wholly credit the state agency consultants' opinions with regard to the impact of Plaintiff's obesity on her work abilities. *See* Tr. 24-27. This constituted a failure to apply the correct legal criteria because the Regulations and Rulings required the ALJ to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors, including supportability, consistency, and specialization. *See* 20 C.F.R. §404.1527(d), (f); *see also* Social Security Ruling 96-6p, 1996 WL 374180. The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. §404.1527(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); *see also* 20 C.F.R. §404.1527(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. §404.1527(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same).

In addition, even if the ALJ had not erred in this manner, a review of the state agency consultants' opinions reveals that they provide no reasonable support for the ALJ's decision concerning Plaintiff's obesity at Step 3. This is so because the medical consultants' opinions appear in a one-page form without any supporting explanation and without even an oblique reference to Plaintiff's obesity. *See* Tr. 50-51. The forms, moreover, were completed in September and December 2004 and thus pre-date much of the medical evidence in the record. See id. One report also indicates, parenthetically "no med. evidence in the file" (Tr. 50), tending to

confirm that the state medical consultants formed their opinions based on an incomplete record. For these reasons, the ALJ's decision regarding the combined effect of Plaintiff's obesity and other impairments at Step 3 of his sequential evaluation is unsupported by substantial evidence.

The ALJ also erred by not assessing or mentioning the impact of Plaintiff's obesity on her residual functional capacity, *see* Tr. 27-31, as required by the regulations, 20C.F.R. §404.1545(a)(2), and explained by Social Security Ruling 02-1p:

> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time ... our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a [sic] regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.
>
> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

Ruling 02-1p, 2000 WL 628049 at *6. Although this Ruling does not require "any particular procedural mode of analysis for obese disability claimants," *Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 412 (6th Cir. 2006), the Regulations required the ALJ in the present case to do more than he did here – reach conclusions not supported by substantial evidence at Step 3, then omit consideration and discussion of obesity and its impact on Plaintiff's residual functional capacity.

The Commissioner's reliance on Dr. Goren's opinions does not avoid the above problems or render the ALJ's errors harmless. This is so because the ALJ also found that Plaintiff suffers from the severe impairment of fibromyalgia and lumbar degenerative disc disease. Although the ALJ found these impairments had limited impact on Plaintiff's residual functional capacity, when combined with Plaintiff's obesity, these

7

> impairments (fibromyalgia and degenerative disc disease) would likely and logically cause greater limitations than they would if Plaintiff was not obese. *See* Ruling 02-1p, 2000 WL 628049 at *6. Dr. Goren's testimony provides little, if any, information about the combined effects of these impairments on Plaintiff's work abilities. For example, the ALJ asked Dr. Goren – somewhat confusingly – "And let's see, she's, she's 5'8" and 242. Does that present any significant [sic] as far as impairment to you, Doctor?" (Tr. 802). Dr. Goren merely answered, "No," id., without further mention of Plaintiff's obesity or her height and weight or the impact obesity has on her work abilities. *See* Tr. 802-13. Indeed, a review of Dr. Goren's testimony does not reveal any meaningful testimony about what impact Plaintiff's obesity combine with her fibromyalgia and degenerative disc disease has on her work abilities. At best, he considers these conditions in isolation and in a conclusory manner. *See, e.g.*, Tr. 802, 810-12.

(Doc. #13, PageID at 101-05). The Commissioner's present contention that the since the ALJ referenced Plaintiff's obesity on numerous occasions during Dr. Goren's testimony, it was reasonable to assume that Dr. Goren considered Plaintiff's obesity in assessing her residual functional capacity is not sufficient to show substantial justification. The Commissioner relies on essentially the same argument raised in support of his Memorandum in Opposition to Plaintiff's Statement of Errors. This argument was rejected in this Court's Report and Recommendations and Judge Rice's adoption of the Report and Recommendations in its entirety. And considering that the ALJ failed to apply the standards mandated by Social Security regulations, neither the Commissioner's decision to support the ALJ's reliance on Dr. Goren's opinions nor the ALJ's decision was "substantially justified." *Cf. Howard*, 376 F.3d at 554 ("Under the circumstances of this case, where the administrative law judge was found to have selectively considered the evidence in denying benefits, we hold that the Commissioner's decision to defend the

administrative law judge is without substantial justification."); *see Gutierrez v. Barnhart*, 274 F.3d 1255, 1259 (9th Cir. 2001) (Government's position not substantially justified where ALJ failed to comply with applicable Social Security regulation); *see also Fraction v. Bowen*, 859 F.2d 574, 575 (8th Cir. 1988) (claimant entitled to EAJA fees where government acted "contrary to clearly established circuit precedent").

### C. The Commissioner's Remaining Argument

Plaintiff request an EAJA award of $4,496.25. The Commissioner does not object to the amount of the award of attorney fees. The Commissioner contends, however, to the extent the motion requests an Order requiring payment of the EAJA award directly to Plaintiff's counsel.

The Commissioner's contention arises under *Ratliff v. Astrue*, __U.S.__, 130 S.Ct. 2521, 2524 (2010) where the Court held that a "§2412(d) fees award is payable to the litigant and is therefore subject to a Government offset to satisfy a pre-existing debt that the litigant owes the United States." In so holding, the Court recognized that historically the Commissioner paid EAJA fees directly to a prevailing plaintiff's attorney. __U.S. at __, 130 S.Ct. at 2528-29. The Court further noted that, based on the record before it, "the Government has since continued the direct payment practice only in cases where the plaintiff does not owe a debt to the [G]overnment and assigns the right to receive the fees to the attorney." *Id*. at 2529 (internal quotation marks omitted).

In the present case, the record lacks evidence tending to show that Plaintiff in fact owes a pre-existing debt to the United States that might cause her EAJA award to be

9

subject to an offset under *Ratliff*. The Commissioner notes, "After the Court awards any such fees to Plaintiff, the Commissioner will consider the propriety of directing payment to Plaintiff's counsel pursuant to an assignment agreement." (Doc. #17, PageID at 129). The Commissioner further states, "Consistent with Ratliff, the government will evaluate the propriety of directing payment of the EAJA fees to Plaintiff's attorney pursuant to an assignment after an evaluation of any debts owed by Plaintiff." *Id.*, PageID at 131 (citing *Ratliff*, 130 S.Ct. at 2529). Because the Commissioner effectively acknowledges that it does not know whether Plaintiff owes it a pre-existing debt to the federal government, no ripe *Ratliff* issue exists. This conclusion is confirmed by *Ratliff* itself, where the government sought an EAJA offset based on its knowledge that the plaintiff owed it a debt that pre-dated the district court's approval of the EAJA award. 130 S.Ct. at 2524-25. In the present case, the Commissioner lacks such knowledge, and there is consequently no ground for the Commissioner to avoid or delay honoring Plaintiff's assignment of his EAJA fees to counsel. *Cf. Ratliff*, __U.S. at __, 130 S.Ct. at 2530 ("the litigant's obligation to pay her attorney is controlled not by the EAJA but by contract and the law governing that contract.")(Sotomayor, J., concurring).

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's Motion for an Award of Attorney Fees Pursuant to the Equal Justice Act (Doc. #16) be GRANTED, and the Commissioner be ordered to pay Plaintiff's attorney fees and costs in the total amount of $4,496.25;

2. The Commissioner be directed to verify, **within twenty-one days of an Order adopting this Report and Recommendations,** whether or not Plaintiff owes a pre-existing debt to the United States that is subject to offset. The Commissioner be further ordered to pay the EAJA award directly to Plaintiff's counsel, if no such pre-existing date exists; and

3. The case remain terminated on the docket of this Court.

October 3, 2012

                       s/Sharon L. Ovington
                        Sharon L. Ovington
                      United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *see also United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981);